**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| Margo Kronberg, as Personal )<br>Representative of the Estate of Joseph )<br>Kronberg, and Margo Kronberg on )<br>Behalf of all the heirs of Joseph Kronberg, )<br> )<br>Plaintiffs, )<br> )<br> )<br>vs. )<br> )<br>Oasis Petroleum North America LLC; )<br>RPM Consulting, Inc.; and )<br>American Portable Mini Storage, Inc. )<br> )<br>Defendants. ) | Case No. 4:13-cv-011<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTIONS FOR SUMMARY**<br>**JUDGMENT** |

Before the Court are the Defendants RPM Consulting, Inc.'s ("RPM") and Oasis Petroleum North America, LLC's ("Oasis") motions for summary judgment filed on November 3, 2014, and November 20, 2014.  See Docket Nos. 115 and 130.  The Plaintiff, Margo Kronberg, filed responses in opposition to the motions for summary judgment on November 28, 2014, and December 12, 2014.  See Docket Nos.136 and 142.  RPM filed a reply brief on December 15, 2014.  See Docket No. 144. Oasis filed a reply brief on December 29, 2014.  See Docket No. 145. Kronberg filed a surreply to Oasis' motion on January 29, 2015.  See Docket No. 146  The Court grants the motions.

I.      **BACKGROUND**

On January 17, 2014, Margo Kronberg filed a complaint against Basin Concrete, Inc., and Oasis.  See Docket No. 1.  On April 24, 2013, Kronberg filed an amended complaint adding RPM,

H and H Electric Inc., R and J Technical Services LLC, American Portables, Inc., and American Portable Mini Storage, Inc., as defendants.  See Docket No. 26.  In the complaint, Kronberg asserts a claim of wrongful death and brings a survival action against all defendants.  The Plaintiff, Margo Kronberg, is a resident of South Dakota and the deceased, Joseph Kronberg, was a resident of South Dakota at the time relevant to this cause of action.  Oasis is a foreign limited liability company with its principal place of business in Houston, Texas.  RPM is a North Dakota corporation with its principal place of business in Denver, Colorado.

On May 9, 2011, Joseph Kronberg was fatally injured while working on the oil rig at the Ross well in Williams County, North Dakota.  Kronberg was an employee of Nabors Drilling at the time.  It had been raining for days, and Kronberg stepped on a metal grate which had been set in a puddle of mud.  The metal grate had been routinely used as a way for workers to knock mud off their boots.  A corner of the grate had punctured a power cord running from the transformer to the rig's change shack.  The grate had become electrified.  Upon stepping onto the grate, Kronberg was electrocuted.  Kronberg died as a result of the injuries sustained.  Michael Bader was the company man on duty.

Oasis engages in oil and gas exploration activities, and holds a mineral lease and right of occupancy at the Ross well site located in Williams County, North Dakota.  On January 6, 2011, Nabors Drilling entered into a written contract with Oasis to drill a well at the Ross well site.  See Docket No. 131-7.  Oasis, through a Master Service Contract, also retained RPM to supervise the day-to-day drilling operations at the Ross well.  See Docket No. 131-8.  RPM is a consultant placement service that provides rig supervisors, directional drillers, and other independent consultants to well operators like Oasis.  The Master Service Contract between Oasis and RPM provides in part as follows:

> [RPM]is an independent contractor, with the authority to control and direct the performance and safety of the details of the work.  [Oasis] is interested only in the results obtained . . . . [RPM] specifically agrees that all persons employed by [RPM] in performing work covered by this Contract, or by [RPM's] subcontractors, are not the employees of [Oasis] for any purpose whatsoever. . . .

<u>See</u> Docket No. 131-8, p. 4.

RPM subsequently assigned three consultants to the Ross well: Michael Bader, Paul Brenneise, and Cole Smith. Bader and Brenneise were alternating rig supervisors, or "company men," and Smith was a night-time directional driller.  Each consultant has a separate subcontractor agreement with RPM which provides:

> 7. Independent Contractor
>
> 7.1 Contractor shall be an independent contractor with respect to the performance of all work and/or services performed hereunder, and neither Contractor nor any one used or employed by Contractor shall be deemed for any purpose to be the employee, agent, servant or representative of RPM in the performance of any work and/or services or any part thereof, in any manner dealt with hereunder, and RPM shall have no direction or control of Contractor, or its employees and agents, except in the results to be obtained.

<u>See</u> Docket No. 131-13, p. 2.

Oasis and RPM filed motions for summary judgment claiming the entities hired to work the Ross well qualify as independent contractors.  Oasis contends that it is not directly liable for Kronberg's death because it did not owe Kronberg a duty of reasonable care.  <u>See</u> Docket No. 131, p. 4.  Oasis contends no duty exists because Michael Bader and RPM were engaged as independent contractors at the Ross well and they exercised exclusive control over their particular operations and areas of specialization.  Further, Oasis claims it was not actively involved in the conduct, direction, or supervision of activities alleged to have caused Joseph Kronberg's death.

RPM contends it owed Joseph Kronberg no duty of care because it engaged Michael Bader as an independent contractor to be the rig supervisor or "company man" on the rig located at the

Ross well.  <u>See</u> Docket No. 116, p. 1.  RPM argues it retained no control over the consultants and cannot be held liable as a matter of law for the consultants' actions.

Kronberg opposes Oasis' motion for summary judgment on three grounds: (1)  Kronberg contends there are disputed facts over whether Oasis retained complete control over Michael Bader, the company man on the Ross well on the day of Kronberg's electrocution, (2) Kronberg contends Oasis had a duty to provide an automated external defibrillator (AED) at the Ross well and failed to meet that duty the day Joseph Kronberg was electrocuted, and (3) Kronberg argues that Oasis had a duty to maintain a reasonably safe work premises, but failed to do so.

## II.   <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law.  <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 654 (8th Cir. 2007); <u>See</u> Fed. R. Civ. P. 56(c).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  <u>Id</u>.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. <u>Diesel Mach., Inc. v. B.R. Lee Indus., Inc.</u>, 418 F.3d 820, 832 (8th Cir. 2005).  The moving party first has the burden of demonstrating an absence of genuine issues of material fact.  <u>Simpson v. Des Moines Water Works</u>, 425 F.3d 538, 541 (8th Cir. 2005).  The non-moving party "may not

4

rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).


III.   **LEGAL DISCUSSION**

Kronberg brings a wrongful death action based upon diversity jurisdiction.  It is well-established that in an action based on diversity jurisdiction, the Court "will apply the substantive law of North Dakota." Atkinson v. McLaughlin, 462 F. Supp. 2d 1038, 1047 (D.N.D. 2006). "To establish a cause of action for negligence, a plaintiff must show the defendant has a duty to protect the plaintiff from injury." Rogstad v. Dakota Gasification Co., 2001 ND 54 ¶ 12, 623 N.W.2d 336 (citing Gullickson v. Torkelson Bros., Inc., 1999 ND 155, ¶ 7, 598 N.W.2d 503).  The existence of a duty is generally a question of law for the court to decide.  Id.  However, if the existence of a duty depends on the resolution of factual issues, those issues must be resolved by the trier of fact. Gullickson, 1999 ND 155, ¶ 6, 598 N.W.2d 503 (internal citations omitted).  "If no duty exists, there is no negligence." Rogstad, 2001 ND 54, ¶ 12, 623 N.W.2d 382.

It is well-established in North Dakota that, as a general rule, an employer is not liable for the torts of an independent contractor. Iverson v. Bronco Drilling Co., Inc., 667 F. Supp. 2d 1089, 1094 (D.N.D. 2009) (citing Grewal v. North Dakota Ass'n of Counties and Northwest Contracting, Inc., 2003 ND 156, ¶ 10, 670 N.W.2d 336).  However, Section 414 of the Restatement (Second) of Torts recognizes an exception to the general rule of employer non-liability.  This exception makes an employer liable for the acts of an independent contractor when the employer has retained sufficient control over the work.  Gasal v. CHS Inc., 798 F. Supp. 2d 1007, 1012 (D.N.D. 2011); Grewal, 2003 ND 156, ¶ 10, 670 N.W.2d 336.  Section 414 provides that the employer can be found directly liable for the employer's failure to exercise its retained control with reasonable care.

5

Iverson, 667 F. Supp. 2d at 1095; Peterson v. City of Golden Valley, N.D., 308 N.W.2d 550, 554 (N.D. 1981).   An employer of an independent contractor who retains control of the work owes a duty of care to the independent contractor's employees to exercise the retained control with reasonable care.  Madler v. McKenzie Cnty., N.D., 467 N.W.2d 709, 711 (N.D. 1991).

The liability created by Section 414 arises only when the employer retains the right to control the method, manner, and operative detail of the work performed.  Restatement (Second) of Torts (1965).  It is not enough that the employer merely retains the right to inspect the work or to make suggestions which need not be followed.  Iverson, 667 F. Supp. 2d at 1094-95 (citing Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 448 (N.D. 1994)).   The comments to the Restatement (Second) of Torts § 414 further clarify this concept:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done.  It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.  Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail.  There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414 cmt. c (1965).

Oasis and RPM entered into a Master Service Contract in which RPM agreed to "diligently and carefully perform all work required . . . and shall furnish all labor, supervision, machinery, materials, equipment, and supplies necessary therefore, unless otherwise provided for herein."  See Docket No. 131-8, p. 4.  The Master Service Contract refers to RPM as an independent contractor of Oasis.  RPM entered into a Subcontractor Contract with Mike Bader, which included similar language referring to Bader as an independent contractor.  See Docket No. 131-13.  The Court finds that RPM was an independent contractor of Oasis, as defined by the Master Service Contract.  Further, the Court finds Michael Bader was an independent contractor of Oasis and RPM, as

defined by the contracts.  Therefore, the sole determination the Court must make is whether Oasis and/or RPM retained control over the operative details and workings of the contractors on the Ross well.

### A.      THE ROLE OF OASIS' RETAINED CONTROL

In its motion for summary judgment, Oasis contends it did not retain any right to control the method, manner, and operative details of the work performed by RPM, Michael Bader, or any other contractor performing work on the Ross well.  Kronberg cites to various emails to support the contention that Oasis exercised retained control of the day-to-day operations on the Ross well. Many of these emails appear to relate to entirely different wells than the Ross well.  See Docket No. 142-1, pp. 1-4, 6-7, 9-13, 17-18, 20, 22.  Other emails relate to daily status reports on the Ross well sent to Oasis.  See Docket No. 142-1, pp. 5.  Section 414 explicitly allows an employer to receive daily status reports without altering the employment status of their independent contractor. Kronberg cites to emails regarding guidelines for preventing violations of state regulations as evidence of Oasis' retained control.  See Docket No. 142-1, pp. 23-27.  The Court finds these emails are merely alterations or deviations of the general plan provided by Oasis to its independent contractors.   These alterations or deviations are not evidence which establish that Oasis' contractors were controlled as to the methods of their work, or as to the operative details.   The emails merely constitute evidence of Oasis' end goal for the Ross well.

Kronberg also contends Oasis had a duty to provide an AED.  Michael Bader testified in his deposition that neither Oasis nor RPM provided a health, safety, and environmental handbook. See Docket No. 131-2, p. 10.  Bader himself was contracted to ensure all operations were conducted in a safe manner.  Further, Nabors Drilling's health, safety, and environmental manual governed at least part of the work done on the Ross well.  See Docket No. 131-2, p. 10.  There is

7

no evidence in the record which reveals that Oasis maintained any retained control over the day-to-day safety operations at the Ross well.  Instead, those duties were undertaken by the various contractors present at the well site.

The Court finds that there is insufficient evidence to demonstrate the retention of control or supervision by Oasis over the work performed by RPM and Michael Bader at the Ross well site, such that the independent contractors were not entirely free to perform the work in their own way. The Court further finds that Oasis did not owe a duty to protect Joseph Kronberg from injuries caused by the acts or omissions of RPM or Michael Bader, because Oasis did not retain a sufficient degree of control over the work performed by the independent contractors.

Kronberg also argues that Oasis had a duty to maintain the well in a reasonably safe condition and to protect Joseph Kronberg from dangerous conditions.  Specifically, Kronberg cites the location of the power cord, puddles of water, and the metal grate as evidence of a dangerous condition.  Another exception to the general rule of employer non-liability is that employers of independent contractors may be liable under the "peculiar risk of harm" and "special danger" exception, found in Sections 416 and 427 of the Restatement (Second) of Torts.  These exceptions establish non-delegable duties for which vicarious liability can be imposed upon the employer of an independent contractor.  However, both the North Dakota Supreme Court and this Court have held that these theories of culpability do not extend to claims by employees of independent contractors, and therefore would not apply here.  See Olson v. Pennzoil, 943 F.2d 881, 884 (8th Cir. 1991); Ackerman v. Gulf Oil Corp., 555 F. Supp. 93, 95-96 (D.N.D. 1982); Pechtl v. Conoco, Inc., 1997 ND 161, ¶ 22, 567 N.W.2d 813; Fleck, 522 N.W.2d at 449-50.

**B.**      **THE ROLE OF RPM'S RETAINED CONTROL**

Kronberg contends there is ample evidence to show RPM exercised retained control over the day-to-day activities of Michael Bader. Kronberg cites numerous emails to support this contention, yet the vast majority of emails contain Bader's invoices and updates on the well's progress. See Docket No. 136-2. These emails indicate Bader was an independent contractor. Status reports are explicitly mentioned in Section 414 of the Restatement (Second) of Torts as insufficient evidence of retained control. Further, invoices are a method of payment commonly associated with independent contractor status. Bader submitted his invoices to RPM, and RPM would in turn bill Oasis. See Docket No. 131-12, p. 25. "The absence of regular, periodic payments is an indicia of independent contractor status." Iverson v. Bronco Drilling Co., Inc., 667 F. Supp. 2d 1089, 1097. Kirk v. Harter, 188 F.3d 1005, 1008 (8th Cir. 1999).

Kronberg also contends that Michael Bader was an employee of RPM because RPM furnished Bader with tools, such as a computer, telephone, and email address. The North Dakota Supreme Court has recognized that "merely providing equipment is not the kind of control that creates a duty." Kristianson v. Flying J Oil & Gas, Inc., 553 N.W.2d 186, 190 (N.D. 1996). Instead, "a duty arises only if the employer, in addition to providing the equipment, also directly supervises or controls its use, or instructs the independent contractor's employee on use of the equipment. Id. There is no evidence in the record which reveals that RPM controlled Bader's use of the equipment. Without any control over the use of the equipment, RPM has no control over "the means and manner of performing the work," which is dispositive in the determination of an employee relationship. Doan ex rel. Doan v. City of Bismarck, 2001 ND 15, ¶ 19, 632 N.W.2d 815. Kronberg also claims Bader was an employee based upon RPM's ability to assign him to a

particular well.  Although Bader said that RPM would inform him where to go after completing work on a rig, there is no indication that Bader was not free to leave an Oasis well in search of work elsewhere.

Finally, Kronberg contends that providing geological and engineering plans and surveys establishes that RPM controlled Bader's work and day-to-day activities.  The Court finds this information merely informed Bader of RPM and Oasis' end goal for the Ross well. The question of retained control is focused "not merely [on] the result, but the manner in which the work is done, as well as the method used."  Newman v. Sears, Roebuck & Co., 43 N.W.2d 411, 414 (N.D. 1950).  RPM may provide general direction and set parameters for the work to be performed without creating an employer/employee relationship, so long as Bader is in charge of executing the plan once he receives it.  There is no evidence in the record which reveals that RPM sought to control the day-to-day operations of the Ross well through the activities of Michael Bader.  The evidence merely indicates that RPM was a consulting firm who provided an independent consultant (Bader) to Oasis.

The Court finds there is insufficient evidence to demonstrate that RPM controlled Michael Bader in a manner that did not allow Bader to be entirely free to perform the work in his own way. The Court further finds that RPM did not owe a duty to protect Joseph Kronberg from injuries caused by the acts or omissions of Michael Bader, because RPM did not retain a sufficient degree of control over the work performed as required under Section 414 of the Restatement (Second) of Torts.

IV.    **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law.  For the reasons set forth above, the Defendants' motions for summary judgment (Docket Nos. 115 and 130) are **GRANTED**.


**IT IS SO ORDERED**

Dated this 27th day of February, 2015

_/s/ Daniel L. Hovland_____
Daniel L. Hovland, District Judge
United States District Court